[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The present action stems from an incident occurring on March 8, 1990, when the defendants' insured, Sean Garvey,[1] "hit [plaintiff's insured, Kevin Mikolinski] in the face with a fire extinguisher" and "also struck [Mikolinski] with his hands, several times in the face." Mikolinski commenced an action against Garvey on June 20, 1990, alleging in three counts: assault, intentional infliction of emotional distress, and willful and wanton behavior. Mikolinski recovered a judgment in his favor.[2] The defendant insurers, Cumberland Mutual Fire Insurance Company and Mid-Atlantic Insurance Company ("Cumberland" and "Mid-Atlantic") denied coverage and a defense for the action.
The plaintiff commenced this present direct action against the defendant insurers pursuant to General Statutes §38a-321,[3] alleging that it was injured as a result of "(a) the actions of Sean Garvey in consuming excessive amount[s] of alcohol and [in being] not otherwise able to control his own actions; (b) the action of Sean Garvey in striking or hitting the Plaintiff about the head while . . . intoxicated or under severe emotional anger; (c) the actions of Sean Garvey in either negligently or inadvertently striking Plaintiff while Plaintiff was attempting to exit a room in which he felt confined; (d) the actions of Sean Garvey in striking the plaintiff while the plaintiff was attempting to control the conduct of said Garvey and; (e) the actions of Sean Garvey in either recklessly or wantonly or outrageously losing control of its emotions in either intentionally or negligently striking the plaintiff." Mikolinski v. Cumberland Complaint, Paragraph 6.
The defendants filed a Motion for Summary Judgment on December 17, 1996,[4] arguing that the plaintiff, in bringing a direct action pursuant to § 38a-321, is limited to the allegations it brought in the underlying complaint; and as the allegations in the underlying complaint described Garvey's CT Page 12138 intentional acts, which acts are excluded under the policy, the defendants Cumberland Mutual and Mid-Atlantic have no duty either to defend or to indemnify Garvey, and therefore, no rights exist to which the plaintiff may be subrogated. In addition, the defendant Mid-Atlantic argues that the plaintiff may not bring a direct action against it as it did not insure Garvey, the plaintiff's subrogor.
Pursuant to Practice Book § 143, the defendants have filed memoranda of law in support of their motion and the plaintiff has filed a memorandum in opposition.
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law . . . ."Thompson and Peck, Inc. v. Division Drywall, Inc., 241 Conn. 370,374, 696 A.2d 326 (1997); Home Ins. Co. v. Aetna Life CasualtyCo., 235 Conn. 185, 202, 663 A.2d 1001 (1995); Practice Book § 384.
"A `genuine' issue has been variously described as `triable,' `substantial' or `real' issue of fact . . . and has been defined as one which can be maintained by substantial evidence . . . . Hence, the `genuine issue' aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred . . . . A `material' fact has been defined adequately and simply as a fact which will make a difference in the result of the case . . . . `Issue of fact' encompasses not only evidentiary facts in issue but also questions as to how the trial would characterize such evidentiary facts and what inferences and conclusions it would draw from them." Craftsmen, Inc. v. Young,18 Conn. App. 463, 465, 557 A.2d 1292 (1989), citing United OilCo. v. Urban Redevelopment Commission, 158 Conn. 364, 378-79,260 A.2d 596 (1969).
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . ." Home Ins. Co. v. Aetna Life andCasualty, supra, 235 Conn. 202. Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine CT Page 12139 issue of material fact, together with the evidence disclosing the existence of such an issue . . . . (Citations omitted; internal quotation marks omitted.) Id., citing Water Way Properties v.Colt's Mfg. Co., 230 Conn. 660, 664-65, 646 A.2d 143 (1994). "To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." Connecticut National Bankv. Great Neck Development Co., 215 Conn. 143, 148, 574 A.2d 1298
(1990), quoting State v. Goggin, 208 Conn. 606, 616-17,546 A.2d 250 (1988). "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." HomeIns. Co. v. Aetna Life Casualty Co., supra, 235 Conn. 202-03.
"Where there is no question of fact or law which remains to be answered . . . a motion for summary judgment should be granted. If the sole question is one of law, it [can] be properly determined on a motion for summary judgment." (Citations omitted.) Schlott v. Zaremski, 32 Conn. Sup. 567, 568-69,345 A.2d 588 (1975).
The defendants argue in their memorandum in support of their motion for summary judgment that under the holding in Home Ins.Co. v. Aetna Life Casualty Co., supra, 235 Conn. 202, the plaintiff's underlying complaint, alleging intentional acts, precludes its bringing a subrogation action alleging acts negating intent.
The plaintiff argues in his memorandum in opposition thatHome Ins. Co. v. Aetna Life Casualty Co. does not hold as the defendants assert with regard to whether the claims brought in the underlying complaint limit the claims that may be brought in the subrogation action. Indeed, the plaintiff argues, Home Ins.
holds in his favor as it states that the "[subrogee may] . . . assert any claim or defense that the insured . . . could have raised had [the insured] . . . brought suit against [the insurer]." Home Ins. Co. v. Aetna Life Casualty Co., supra,235 Conn. 198. According to the plaintiff then, he may assert whatever claims or defenses that the subrogor, Garvey, could have brought against his insurer; and as Garvey could have alleged intoxication as a special defense in an action against his insurer for failure to defend, the plaintiff argues that as his subrogee, he can assert such claims in his subrogation action.
General Statutes § 38a-321 provides a judgment creditor with a right of action against the defendant's insurer in the CT Page 12140 case where the judgment is not satisfied within 30 days of its being rendered. In the direct action, "the judgment creditor [is] . . . subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant . . . could have enforced his claim against such insurer had such insurer paid such judgment."
"The principle of substitution in subrogation actions (direct actions) refers not to the relationship between the underlying claim and the subrogation action but, rather, to the substitution of the subrogee for the subrogor. Indeed, the right to subrogation does not depend on the existence of any earlier litigation." Home Ins. Co. v. Aetna Life Casualty Co., supra,235 Conn. 196.
Thus, in Home Ins., the insurer-subrogee (Home) paid its insured for fire damages to its building, and thereafter brought a subrogation action against the defendant's insurer (Aetna). Id., 189. As the Aetna insurance policy excluded intentional acts from coverage, subrogee Home sought to prove the diminished mental capacity of Aetna's insured by introducing the insured's mental health records. Id., 190. Home argued that its action against the insurer Aetna, was the same as its action against the defendant insured, and since the defendant put its mental state into issue in the underlying claim, Home, standing in the insured's place, could introduce his mental state. Id., 194. In reversing the Appellate Court on this issue, the Supreme Court reasoned that the relevant link was not between the underlying claim and the subrogation claim, but was rather between the subrogor (defendant insured) and the subrogee (Home). Id., 196. The court distinguished the underlying common law trespass action for fire damages from the statutory subrogation action. Id. These separate and distinct claims were commenced by the same plaintiff, but "involved . . . different defendant[s] who w[ere] not . . . part[ies] to the other action[s]." Id., 196-97. The court noted further that each action would require the proving of different facts. Id.
Thus, the plaintiff is correct in its reading of the Home
holding as it very specifically views the underlying action and the subrogation action as separate and distinct. "We are not persuaded . . . . that [the] subrogation claim against [the insurer] is, in effect, the same action as [the underlying action] . . . ." Home Ins. Co. v. Aetna Life and Casualty, supra,235 Conn. 196-97. The plaintiff is therefore not limited to the CT Page 12141 claims he brought in the underlying action, as his subrogation action against the insurer is distinct from his personal injury action against Garvey. See id. Therefore, the plaintiff may put forward claims in his subrogation action which differ from the claims he brought in his personal injury action, as the two actions are separate and distinct. Id.
The defendants argue that they rightfully denied the plaintiff coverage and a defense as the insurance policy, section II. D. 4., specifically excludes "bodily injury or property damage . . . which is the consequence of an insured's willful harm of knowing endangerment."
The plaintiff argues that there is a genuine issue of material fact as to whether Garvey's conduct was intentional or unintentional and thus whether a defense or coverage should have been afforded to Garvey. In support thereof, the plaintiff submits an investigative report produced by Mid-Atlantic Adjustment Company in which the claims investigator concludes, "[b]ased on the statement provided by Sean Garvey, it does not appear as though this loss can be construed as an intentional act on behalf of Garvey." Dep. Lee Norcross, R. 53.
Whether the . . . defendant ha[s] a duty to defend the [original] action depends on whether the complaint in the action state[s] facts which appear to bring [the plaintiff's] claimed injury within the policy coverage." Schwartz v. Stevenson,37 Conn. App. 581, 585, 657 A.2d 244 (1995), citing Missionaries ofCo. of Mary, Inc. v. Aetna Casualty Surety Co., 155 Conn. 104,110, 230 A.2d 21 (1967). "If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." (Emphasis in the original.) City ofWest Haven v. Liberty Mutual Ins. Co., 639 F. Sup. 1012, 1017 (D.Conn. 1986), citing Lee v. Aetna Casualty Surety Co.,178 F.2d 750 (2d Cir. 1949) (Hand, J.). "If the complaint states different causes of action or theories of recovery against the insured and one such cause is within the coverage of the policy, the insurer is bound to defend the whole suit." Schurgest v. Schuman,156 Conn. 471, 490, 242 A.2d 695 (1968).
"The duty to defend has a broader aspect than the duty to indemnify and does not depend on whether the injured party will prevail against the insured." Missionaries of Co. of Mary, Inc.v. Aetna Casualty Surety Co., supra, 155 Conn. 110. Thus, "when an exclusion clause is relied upon to deny coverage, the insurer CT Page 12142 has the burden of demonstrating that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and further, that the allegations in toto, are subject to no other interpretation." (Emphasis in the original.)State of N.Y. v. Amro Realty Corp., 936 F.2d 1420, 1427 (2d Cir. 1991), cited in Berdon v. Chicago Title Ins. Co. Inc., Superior Court, judicial district of New Haven, at New Haven, Docket No. 304940, (April 23, 1996, Burns, J.) ( ___ Conn. L. Rptr. ___ ).
In City of West Haven, supra, 639 F. Sup. 1017, the district court found that the defendant insurance company had a duty to defend its insured, City of West Haven, in several workmen's compensation actions even where the underlying claims were ambiguous and thus not obviously within the policy's coverage: the claimants sought coverage for injuries covered under workmen's compensation law, requiring insurance coverage, as well as under two other statutes, only one of which was within the workmen's compensation law. Id., 1014. The Workmen's Compensation Commission ordered the city to pay the claims, but did not indicate under which statutes the awards were made. Despite the claims' ambiguity, the court found that the insurance company had a duty to defend the city "because the claims were unquestionably at least potentially within the policy coverage." (Emphasis added.) Id., 1017. See Schwartz v. Stevenson, supra,37 Conn. App. 585-86 ("If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured . . . [Thus,] [a] complaint need not negate each and every exclusion within a policy in order to trigger a contractual obligation to defend.); Palace Laundry Co. v.Hartford Accident and Indemnity Co., 27 Conn. Sup. 222, 230,234 A.2d 640 (1967) (finding that the insurance company had a duty to defend the plaintiff for "although the allegations of the complaint on the issue of bodily injury caused by accident are possibly gossamer thin, there was at least the possibility that the plaintiff . . . would prove that the nervous condition . . . resulted from the continued vibrations of the machinery on the laundry premises"); Granite State Ins. Co. v. Paladino, Superior Court, judicial district of Stamford/Norwalk, at Stamford, Docket No. 099629, (April 15, 1992, Rush, J.) (7 CSCR 536, 537) (finding that the insurer had a duty to defend, as its complaint failed to assert facts coming within the policy's exception); TravelersIndemnity Co. v. Dingwell, 414 A.2d 220, 226 (Me. 1980) ("Precision 13 not required in the complaint, and it is not necessary for determining a duty to defend. The correct test is whether a potential for liability within the coverage appears CT Page 12143 from whatever allegations are made.") (Emphasis in the original.)[5]
The plaintiff's submission of deposition testimony by Lee Norcross raises a genuine issue of material fact as to whether Garvey's acts were intentional; see Lee Norcross Dep., R. 53; and thus, the questions of law: (1) whether the defendants have a duty to cover and defend Garvey, and (2) whether rights exist to which the plaintiff is subrogated may not be decided as they are dependant on the question of fact.
It must be pointed out that even if the plaintiff's subrogation action was limited to the claims brought in the underlying action, the plaintiff's claims of injury resulting from assault and willful and wanton behavior would not necessarily be excluded by the defendant insurers' policy as intentional acts. Under General Statutes § 53a-61, "a person is guilty of assault in the third degree when he recklessly causes serious physical injury to another person." And under Connecticut law, neither reckless nor willful misconduct provides the intent necessary for the intentional act exclusion to bar coverage. American Ins. Co. v. Saulnier, 242 F. Sup. 257, 261
(D.Conn. 1965).[6] See Dubay v. Irish, 207 Conn. 518, 533,542 A.2d 711 (1988) ("`willful,' `wanton,' or `reckless' conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent . . ."). As the plaintiff's claims of injury resulting from assault and willful and wanton behavior fall "even possibly within the coverage," even the plaintiff's original complaint would seem to trigger the defendant insurers' duty to defend.
The defendants further argue that the plaintiff may not bring a direct action against defendant Mid-Atlantic as Mid-Atlantic did not insure the plaintiff's subrogor, Garvey.
The plaintiff declines to brief the issue of whether it may bring a direct action against defendant Mid-Atlantic. As the plaintiff may only be subrogated to the rights of [Garvey] to the same extent that [he] . . . could have enforced his claim against [his] insurer; Home Ins. Co. v. Aetna Life and Casualty, supra,235 Conn. 198; and as the plaintiff has failed to put forth evidence that Mid-Atlantic was Garvey's insurer, the plaintiff has failed to meet his burden. "Claims mentioned but not adequately briefed are deemed abandoned." Pie Plate, Inc. v.CT Page 12144Texaco. Inc., 35 Conn. App. 305, 315, 645 A.2d 1044 (1994).
Therefore, the defendants' motion for summary judgment is granted as to the issue of whether the plaintiff may bring a direct action against defendant Mid-Atlantic.
In conclusion, the defendant Cumberland Mutual Fire Insurance Company's Motion for Summary Judgment is denied and the defendant Mid-Atlantic's motion for summary judgment is granted.
Zoarski, J. Judge Trial Referee